Walter R. Dahl, CSB No. 102186 [wdahl@DahlLaw.net]
Andrew Brian Reisinger, CSB No. 277472 [abreisinger@DahlLaw.net]
DAHL LAW, ATTORNEYS AT LAW
2304 "N" Street
Sacramento, CA 95816-5716

Telephone: (916) 446-8800
Telecopier: (916) 741-3346

Attorneys for Caffe Ettore Incorporated,
a California corporation

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| In Re:<br><br>**Caffe Ettore Incorporated, a California corporation**<br><br>1168 National Drive, Suite 10, Sacramento, CA 95834<br>TIN: xx-xxx1447<br><br>　　　　　　　　　Debtor(s). | Case No.: 18-22152-B-11<br>DC No.:　DL-04<br><br>Date:　n/a<br>Time:　n/a<br>Judge:　Jaime<br>Courtroom:　32; Dept B<br>Place:　501 I Street, 6th Floor<br>　　　　Sacramento CA 95814 |

### STIPULATION BETWEEN DEBTOR AND FIVE STAR BANK
### TO AUTHORIZE USE OF CASH COLLATERAL
### [11 U.S.C. § 363(c)(2)(A)]

Caffe Ettore Incorporated, a California corporation ("Debtor") and Five Star Bank, a California banking corporation ("Bank") by and between their respective attorneys, stipulate and agree ("Stipulation") as follows:

1. Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 101, et seq.) on April 10, 2018. No trustee has been appointed in Debtor's Chapter 11 case, and Debtor is managing its affairs as debtor-in-possession.

2. Jurisdiction for this stipulation exists pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 363.

1

3. Debtor is engaged in the business of retail and wholesale bakery & cafes in the Sacramento metropolitan area under the trade names "Ettore's" and "Ettore's European Bakery" ("the Business").

4. Bank is a creditor of Debtor, and Debtor believes that Bank has a perfected first priority security interest in substantially all of the personal property assets of Debtor and the estate, including specifically but without limitation, the inventory, accounts receivable, chattel paper, general intangibles, furniture, fixtures and equipment, and the proceeds thereof, of the Business.

5. In the ordinary course of operation of the Business, it will be necessary for Debtor to use the receivables, inventory, and other personal property in which Bank asserts a security interest. Specifically, it is imperative that Debtor be allowed the use of cash collateral to pay employee's payroll, pay suppliers and overhead expenses for running the Business, and to pay other administrative expenses, including quarterly fees to the United States Trustee.

6. The use of cash collateral by Debtor to pay suppliers and overhead will result in Debtor and the estate obtaining new inventory and receivables that otherwise would not be available to the estate. Pursuant to this Stipulation, such new inventory and receivables shall constitute replacement collateral to Bank, as a part of the adequate protection to which Bank is entitled in consideration of the use of its existing collateral.

7. Subject to the provisions of this Stipulation, Debtor is authorized to utilize the inventory and accounts of the Business, and the proceeds thereof, to pay customary and normal operating expenses in the ordinary course of the Business, and to pay administrative expenses including quarterly fees to the United States Trustee in accordance with the monthly budget attached as Exhibit "A", with up to a 10% monthly variance above each line item amount being allowed at the discretion of Debtor.

8. Nothing in this Stipulation shall preclude Debtor from requesting Bank's consent to the payment of a retainer or periodic compensation to its authorized professionals, subject to the notice and advance approvals otherwise required by Bankruptcy Code §§ 326-331, and Bank agree to evaluate and respond to any such requests in good faith and on a timely basis. In the event any such requests are approved, Debtor shall modify the monthly budget attached as Exhibit "A" and shall provide a copy of such modified budget to Bank and to all parties which have then requested special notice in Debtor's case. Other than as otherwise required by Bankruptcy Code §§ 326-331, it shall not be necessary to

obtain court approval for the requisite modification of this Stipulation. Notwithstanding the foregoing, this Stipulation shall not constitute consent to the use of cash collateral for the purposes set forth in this Paragraph, other than as to the $4,000 per month line item set forth on Exhibit "A" to be tendered to the client trust account of Dahl Law, Attorneys At Law as part of its initial retainer for services as Debtor's bankruptcy counsel.

9. Debtor shall establish and maintain its debtor-in-possession accounts solely at American River Bank. Debtor shall deposit all of its gross receipts, including all cash, checks, money orders, credit card receipts, and debit card and other EFT's, directly and exclusively into its DIP accounts at American River Bank.

10. During the term of this Stipulation, Debtor shall not purchase, lease, order, or otherwise become obligated to acquire any motor vehicle, or any item of furniture, fixtures and equipment in excess of a total cost of $1,000.00, without the prior written consent of Bank.

11. During the term of this Stipulation, Debtor shall, to the extent practicable, minimize purchases and other transactions in currency and coin, other than as part of its normal cash sales to retail customers. During the term of this Stipulation, Debtor shall maintain a cash disbursements journal, to which shall be posted contemporaneously with each non-retail cash expenditure, the date, payee name, invoice number, description, and amount. Copies of this journal shall be provided to Bank upon request.

12. During the term of this Stipulation, Debtor shall maintain a cash receipts journal, to which shall be posted contemporaneously with each non-retail cash receipt, the date, customer name, invoice number, description, and amount. Copies of this journal shall be provided to Bank upon request.

13. During the term of this Stipulation, Debtor shall maintain a disbursements journal, to which shall be posted contemporaneously with each disbursement other than cash and payroll, the date, check number, payee, invoice or P.O. number, description, budget line category, and amount. Copies of this journal shall be provided Bank upon request.

14. During the term of this Stipulation, Debtor shall provide to Bank upon request complete copies of all payroll journals, tax withholding schedules and other reports prepared by its payroll service.

15. On or before the 15th day of each month during the term of this Stipulation, Debtor shall

provide to Bank a complete copy of its monthly report of operations for the immediately preceding month, which report shall contain an income and expense schedule in the same format and with the same line item entries as the budgets attached as Exhibit "A", and shall include "budgeted", "actual" and "variance" columns for each line item.

16. As adequate protection, during the term of this Stipulation, on or before the 15th day of each month Debtor shall tender to Bank interest-only payments on each of the following loans:

| Description | Loan # | Principal Balance | Undisbursed | Interest-Only Payment | Principal & Interest Payment | Maturity |
|---|---|---|---|---|---|---|
| Equipment Term | 32514057 | $ 78,560.21 | $ 0 | $ 400 | $ 2,750 | May 1, 2020 |
| Revolving Line | 31806876 | $ 500,000.00 | $ 0 | $ 3,350 | $ 5,702 | May 7, 2018 |
| Working Capital | 922518694 | $ 225,000.00 | $ 0 | $ 1,241 | $ 2,800 | Mar 1, 2027 |
| Production Facility | 932517902 | $ 1,536,538.08 | $ 0 | $ 8,047 | $ 18,740 | Mar 1, 2027 |
| Roseville | 932517910 | $ 1,024,358.72 | $ 0 | $ 5,365 | $ 12,494 | Apr 1, 2027 |
| Letter of Credit | 31806819 | $ 0 | $ 66,340 | | | Jan 10, 2019 |

17. The authorization for use of cash collateral provided by this Stipulation shall be from April 10, 2018 through and including June 30, 2018, or the date of entry of an order confirming a plan of reorganization in this case, whichever occurs earlier. Following final approval of this Stipulation by the bankruptcy court, Debtor and Bank may extend its term by written agreement without the necessity of further notice and hearing or court order.

18. As adequate protection against any decrease in the value of their interest in any of its collateral and cash collateral, and to the same extent that their pre-petition collateral and cash collateral are expended, Bank is granted a security interest in all post-petition property of Debtor, the Business and the estate of the same type and in the same relative priority in which Bank had a perfected pre-petition security interest. The replacement lien(s) are limited to an amount equal to the diminution in value of the pre-petition collateral resulting from Debtor's post-petition operations. Such post-petition security interest shall be subordinate only to existing, valid, perfected, and non-avoidable liens and encumbrances senior to the pre-petition liens held by Bank (if any), and to the compensation and expense reimbursement (excluding professional fees) which ultimately may be allowed to any trustee

who may be subsequently appointed in this case.

19. As additional adequate protection against any decrease in the value of Bank's interest in any of its collateral and cash collateral, Bank is granted a security interest in all personal property of Debtor, the Business and the estate. Such security interest is limited to an amount equal to the diminution in value of the pre-petition collateral resulting from Debtor's post-petition operations. Such security interest shall be subordinate only to senior pre-petition, valid, perfected, and non-avoidable liens and encumbrances against such property (if any), and to all the expenses of administration under Chapter 7 (including professional fees) in the event Debtor's Chapter 11 case is converted prior to confirmation of a plan of reorganization.

20. The security interests granted to Bank by this Stipulation shall be perfected by operation of law upon entry of an order approving this Stipulation without the necessity of filing UCC-1 financing statements with the California Secretary of State or fixture filings with the applicable County Recorder.

21. In the event that, notwithstanding the adequate protection provided by this Stipulation, the cash collateral of Bank is diminished during the period of use covered by this Stipulation, Bank shall have an allowed claim under Bankruptcy Code §507(a)(1) in the amount of such diminution, and such claim shall have priority over every other claim allowable under such subsection, subject to the limitations of Bankruptcy Code §726(b). Bank' rights under Bankruptcy Code §507(b) are preserved.

22. Debtor waives any rights of the estate under Bankruptcy Code §506(c) for recovery against Bank or its collateral of the costs and expenses of preserving such collateral incurred during the period the estate is entitled to use cash collateral pursuant to this Stipulation.

23. Nothing in this Stipulation shall preclude Debtor from filing a motion with this court for authorization to use Bank's cash collateral on terms and conditions different than as set forth in this Stipulation, or in the event that Bank terminates its consent to the use of cash collateral pursuant to this Stipulation.

24. Nothing in this Stipulation shall preclude Debtor or any other party in interest from contesting the validity, perfection or amount of Bank's liens or debts, or the relative priorities between and among Bank's liens, and any liens or encumbrances of any person not a party to this Stipulation.

25. Nothing in this Stipulation shall affect or limit the right of Bank to take any action or file

any pleading in this case, including, without limitation, a motion for relief from stay and/or for adequate protection.

26. The occurrence of any one or more of the following shall constitute an event of default under this Stipulation:

    a. Debtor's failure to timely perform any obligation under the terms of this Stipulation;

    b. appointment of a trustee under Bankruptcy Code §1104;

    c. conversion of this Chapter 11 case to a case under Chapter 7;

    d. resignation or removal of Ettore Ravazzolo as Debtor's President;

    e. sale or transfer of sufficient outstanding shares of Debtor's common stock to effect a change in the person now holding the controlling interest;

27. Upon the occurrence of an event of default, Bank may terminate its consent to the use of cash collateral in the event such default is not fully cured within three (3) business days following e-mail transmission of written notice of default to Debtor's counsel, provided however that Bank's consent to the use of cash collateral shall automatically terminate upon conversion of this Chapter 11 case to a case under Chapter 7.

28. This Stipulation is subject to Bankruptcy Court approval after notice and hearing pursuant to Fed. R. Bankr. P. 4001(d).

*[remainder of page intentionally left blank]*

29. Except as may be specifically identified and justified below, this Stipulation contains only operative provisions which will normally be approved by the court in accordance with *Guidelines for Cash Collateral and Financing Stipulations* adopted June 16, 1994 by the United States Bankruptcy Court for the Eastern District of California:

*Provisions which would not normally be approved:* **None.**

Dated: 17-Apr-2018

DAHL LAW,
ATTORNEYS AT LAW

By: /s/ Walter R. Dahl
Walter R. Dahl
Attorneys for Caffe Ettore Incorporated, a California corporation

Dated: 4/17/18

HEFNER STARK & MAROIS, LLP,
ATTORNEYS AT LAW

By: /s/ Thomas P. Griffin, Jr.
Thomas P. Griffin, Jr.
Attorneys for Five Star Bank, a California banking corporation

**Caffe Ettore, Inc.**
Cash Flow History and Forecast
Updated Through: 16-Apr-2018

| Forecast Week | | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Status | | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Week Beginning | | 4/9/2018 | 4/16/2018 | 4/23/2018 | 4/30/2018 | 5/7/2018 | 5/14/2018 | 5/21/2018 | 5/28/2018 | 6/4/2018 | 6/11/2018 | 6/18/2018 |
| Week Ending | | 4/15/2018 | 4/22/2018 | 4/29/2018 | 5/6/2018 | 5/13/2018 | 5/20/2018 | 5/27/2018 | 6/3/2018 | 6/10/2018 | 6/17/2018 | 6/24/2018 |
| Total Cash Beg of Week | | 40,000 | 2,404 | 46,946 | 44,632 | 35,187 | 31,001 | 171,081 | 127,813 | 138,008 | 146,582 | 154,081 |
| **Cash Inflow** | | | | | | | | | | | | |
| FO Daily Sales | | 115000 | 115000 | 115000 | 115000 | 130000 | 115000 | 115000 | 115000 | 115000 | 115000 | 115000 |
| Roseville Sales | | 85000 | 85000 | 85000 | 85000 | 100000 | 85000 | 85000 | 85000 | 85000 | 85000 | 85000 |
| Nugget Collections | | 22500 | 22500 | 27500 | 22500 | 22500 | 22500 | 22500 | 22500 | 22500 | 22500 | 22500 |
| Wedding / Specialty Cakes | | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 | 3000 |
| Other Wholesale | | 29000 | 2500 | | 27000 | | | | | | | |
| Other | | | | | | | | | 27000 | | | |
| Total Cash Inflow | | 254,500 | 228,000 | 230,500 | 252,500 | 255,500 | 225,500 | 225,500 | 252,500 | 225,500 | 225,500 | 225,500 |
| **Cash Outflow** | | | | | | | | | | | | |
| Payroll | | | | | | | | | | | | |
| 401k Benefit | | | | 4100 | | 4100 | | | 4100 | | 4100 | |
| Insurance | | 30000 | | | | 30000 | | | 30000 | | 30000 | |
| Payroll | | 110000 | 60000 | 110000 | 60000 | 110000 | | 100000 | 25000 | 75000 | 100000 | 75000 |
| Insurance & 401k Deductions | | | -7500 | | -7500 | | | -7500 | | -7500 | | -7500 |
| COGS Payroll Total | | 140,000 | 52,500 | 114,100 | 52,500 | 144,100 | - | 100,000 | 59,100 | 75,000 | 134,100 | 75,000 |
| Materials and Other COGS | | 30000 | 60000 | 60000 | 60000 | 60000 | 60000 | 60000 | 60000 | 60000 | 60000 | 60000 |
| Mat and Other COGS Total PAID OUT | | 30,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| **Operating Expenses** | | | | | | | | | | | | |
| G&A Payroll | | 50,448 | 53,240 | | 53,240 | 12,778 | | 53,240 | 37,670 | 53,240 | | 53,240 |
| Rent & CAM | | | | | 37,670 | | | | | 12,778 | | |
| Consulting Fees | | | | | | | | | | | | |
| Materials and Supplies | | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,600 | 7,500 | 7,500 |
| Music | | | | | 476 | | | | 476 | | | |
| Vehicle Leases | | 8,182 | | | 8,182 | 8,182 | 8,182 | 8,182 | 8,182 | | 8,182 | |
| Cleaning | | 1,385 | 1,385 | 1,385 | 1,385 | 1,385 | 1,385 | 1,385 | 1,385 | 1,385 | 1,385 | 1,385 |
| Fuel | | | | 1,000 | | | | 1,000 | | | | 1,000 |
| Accounting | | | | | 4,000 | | | | | | | |
| Legal | | | | | | | | | | | | |
| Cloud | | | | | 600 | | | | 600 | | | |
| Monthly Merchant Fees | | 11,570 | 488 | 413 | 8,610 | 11,570 | 488 | 413 | 8,610 | 11,570 | 487 | |
| Equipment Lease | | | 1,161 | | | | 1,161 | | | | 1,161 | |
| Copier Leases/Costs | | | 1,618 | | | | 1,618 | | | | 1,618 | |
| General Liability/Workers Comp. | | 16,285 | | | 16,285 | | | | 16,285 | | | |
| Pest Control | | | 480 | | | | | 480 | | | | 480 |
| Petty Cash Reimb | | | | | | | | | | | | |
| Daily Merchant Fees | | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| Sales Tax | | | | 33,666 | | | | 30,000 | | | | 30,000 |
| Telephone/Internet/Cable | | 2,126 | 305 | | 1,023 | 1,103 | 305 | | 1,023 | 1,103 | 305 | |
| Miscellaneous - Non COGS | | | | 10,500 | 3,374 | | | 10,500 | 3,374 | | | 10,500 |
| Owner Draws | | | | | | | | | | | | |
| Repairs/Maintenance | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Utilities | | 579 | 13,850 | 500 | 579 | 579 | 13,850 | 579 | 579 | 13,850 | | |
| Operating Expenses Total | | 101,246 | 69,927 | 58,714 | 146,095 | 38,086 | 24,389 | 108,768 | 92,855 | 91,426 | 23,901 | 97,842 |

Exhibit A
Page 1

**Caffe Ettore, Inc.**
**Cash Flow History and Forecast**
Updated Through: 16-Apr-2018

| Forecast Week | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Status | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Week Beginning | 4/9/2018 | 4/16/2018 | 4/23/2018 | 4/30/2018 | 5/7/2018 | 5/14/2018 | 5/21/2018 | 5/28/2018 | 6/4/2018 | 6/11/2018 | 6/18/2018 |
| Week Ending | 4/15/2018 | 4/22/2018 | 4/29/2018 | 5/6/2018 | 5/13/2018 | 5/20/2018 | 5/27/2018 | 6/3/2018 | 6/10/2018 | 6/17/2018 | 6/24/2018 |
| COGS, OpEx, & Payroll Subtotal | 271,246 | 182,427 | 232,814 | 258,595 | 242,186 | 84,389 | 268,768 | 211,955 | 226,426 | 218,001 | 232,842 |
| EXTRA EXPENSES | | | | | | | | | | | |
| **Financing / Investing** | | | | | | | | | | | |
| Interest on New Loans | 17,500 | | | | 17,500 | | | | 17,500 | | |
| Sprinter Loan | | 1,031 | | | | 1,031 | | | | | 1,031 |
| Five Star Loan Payment | 3,350 | | | 3,350 | | | | 3,350 | | | |
| **Financing / Investing Total** | **20,850** | **1,031** | **-** | **3,350** | **17,500** | **1,031** | **-** | **3,350** | **17,500** | **-** | **1,031** |
| **Cash Outflows** | **292,096** | **183,458** | **232,814** | **261,945** | **259,686** | **85,420** | **268,768** | **215,305** | **243,926** | **218,001** | **233,873** |
| **Weekly Change in Cash** | **(37,596)** | **44,542** | **(2,314)** | **(9,445)** | **(4,186)** | **140,080** | **(43,268)** | **10,195** | **8,574** | **7,499** | **(8,373)** |
| **Ending Cash** | **2,404** | **46,946** | **44,632** | **35,187** | **31,001** | **171,081** | **127,813** | **138,008** | **146,582** | **154,081** | **145,708** |